

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN 11

GROVER SELLERS
ATTORNEY GENERAL

Honorable A. J. Luckett
County Attorney
Comal County
New Braunfels, Texas

Dear Sir:

Opinion No. 0-7156

Re: Is the sale of "Min-Sol" under
the given facts subject to
criminal or civil penalties
under the Commercial Fertilizer
statutes?

We have for attention and reply your request for an
opinion on the above subject. We quote below your letter in full.

"I am confronted with a question of the proper
interpretation of our Commercial Fertilizer Statutes,
to-wit, Articles 1709 to 1720, of the Penal Code, and
Articles 94 to 108, of the Revised Civil Statutes of
Texas.

"The material known as 'Min-Sol' is mined and
sold to the distributors or jobbers throughout the
state by the 'Min-Sol Company', a joint venture,
whose general offices and principal place of business
is located in this county. Its greatest market is in
the Rio Grande Valley, where it is solu to the citrus
growers by Lone Star Chemical Company, of San Juan,
Texas.

"Assuming the correctness of the statement of
facts contained in the brief and exhibits attached
hereto, may I submit two questions, viz:

"Is the sale of 'Min-Sol', under the circum-
stances and conditions set forth in the brief, sub-
ject to criminal or civil penalties under the Commer-
cial Fertilizer Statutes? Is there, under said cir-
cumstances and conditions, any necessity for the Min-
Sol Company, or anyone else offering or selling 'Min-
Sol', to comply with the Commercial Fertilizer Stat-
utes of this State?"

We think it necessary before attempting to answer the questions you have raised to first determine whether or not the material known as "Min-Sol" meets the definition of a commercial fertilizer as defined by Article 1716 of our Penal Code, which reads as follows:

"A commercial fertilizer is any material, substance or mixture which contains or is claimed to contain more than one per cent of total phosphoric acid, or potash or nitrogen and which is used for application to the soil to promote the growth of crops, or any substance, material or mixture, which is claimed to exert a beneficial action upon the soil or to promote the growth of crops. Lime, limestone, marl, underground moss, stock pen manure, barnyard manure, or the excrements of any domestic animal shall be exempt from the provisions of this chapter, in case that said manure or excrement has not been dried or manipulated or otherwise treated or is not claimed to have a value of more than $4 a ton." (Emphasis ours)

Article 108 of our Civil Statutes reads as follows:

"The terms 'commercial fertilizer,' 'misbranded,' and 'adulterated,' as used in this chapter, shall have the same meaning as is given those terms in Article 1716 of the Penal Code."

From the above two Articles, therefore, we must obtain the definition of commercial fertilizer. Particular emphasis is placed here upon the words "or any substance, material or mixture, which is claimed to exert a beneficial action upon the soil or to promote the growth of crops." We think it clear that the intention of the Legislature in defining commercial fertilizer as it did under Article 1716 was to bring under the provisions of the Article any material offered for sale as an amendment to soil or as a substance which would be beneficial to the growing of crops. While it may be true the material you mentioned fails to meet the chemical definition of commercial fertilizer because it has a less amount of phosphorus than is required by the statute, we do think that the substance is claimed by the Company to be of benefit to soil and that it does promote the growth of crops; therefore, it would appear to us that it is a commercial fertilizer within the meaning of Article 1716 of the Penal Code.

The civil and penal articles relating to the marketing of commercial fertilizer are similar; in fact, some of them are identical.

Unquestionably, it was the intention of the Legislature in passing the Commercial Fertilizer Statutes to prohibit fraud upon the public, i. e. the sale of material by false advertising. This is within the police power of our State Government. We do not contend that the State Chemists or any other agency of the Government could prevent a corporation or a person from selling the materials you mentioned, but we do contend, and we here hold, that such corporation or person offering for sale the material must comply with both the civil and criminal statutes governing the marketing and sale of commercial fertilizer.

Trusting the above satisfactorily answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By   E. M. DeGeurin
       Assistant

EMDeG/JCP

